# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Warren Franklin, | Case No. 22-cv-646 (JRT/TNL) |
| Petitioner, | |
| v. | **REPORT & RECOMMENDATION** |
| Warden J. Fikes, | |
| Respondent. | |

Warren Franklin, Reg. No. 11944-031, FCI Sandstone, K-1, P.O. Box 1000, Sandstone, MN 55072 (pro se Petitioner); and

Ana H. Voss and Chad A. Blumenfield, Assistant United States Attorneys, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents).

## I. INTRODUCTION

This matter is before the Court on Petitioner Warren Franklin's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1. This action has been referred to the undersigned magistrate judge for a report and recommendation to the district court, the Honorable John R. Tunheim, United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, the Court recommends that the petition be denied and this matter be dismissed.[1]

---

[1] "Because the Court can resolve [Petitioner's p]etition by relying on the record, an evidentiary hearing is not necessary." *Walton v. Fikes*, No. 21-cv-1269 (KMM/ECW), 2022 WL 1652658, at *6 (D. Minn. Apr. 22, 2022) (citing *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983)), *report and recommendation accepted*, 2022 WL 1645668 (D. Minn. May 24, 2022); *see also, e.g., Martinez v. Eischen*, No. 22-cv-1390 (JRT/DTS), 2023 WL 4374174, at *3 (D. Minn. July 6, 2023), *pet. denied*, 2023 WL 4373918 (D. Minn. July 6, 2023).

## II.  BACKGROUND

Petitioner is currently incarcerated at the federal correctional institution located in Sandstone, Minnesota ("FCI Sandstone").  Petitioner is serving a 60-month term of imprisonment for drug and weapons offenses.  Decl. of Mark DeLoia ¶ 7, ECF No. 8; Ex. B to DeLoia Decl., ECF No. 8-2 at 2.  The Federal Bureau of Prisons' ("BOP") website shows a projected release date of April 22, 2026.  *Find an inmate.*, Fed. Bureau of Prisons, http://www.bop.gov/inmateloc/.

### A.  Cell Phones Discovered

Prior to being confined at FCI Sandstone, Petitioner was confined at the federal prison camp located in Leavenworth, Kansas.  Pet. at 1; *cf.* Ex. D to DeLoia Decl., ECF No. 8-4 at 1 ("LVN CAMP").  On August 18, 2021, while Petitioner was at that facility, a corrections officer observed Petitioner "with two black LG cell phones in both of his hands."  Ex. D to DeLoia Decl., ECF No. 8-4 at 1.  The cell phones were "immediately confiscated" and documented.  Ex. D to DeLoia Decl., ECF No. 8-4 at 1; *see* Ex. D. to DeLoia Decl., ECF No. 8-4 at 4 (photo of cell phones), 5 (chain of custody log).

### B.  Investigation, Initial Hearing & Advisement of Rights

The following day, August 19, 2021, Petitioner received a copy of the incident report charging him with a violation of Code 108, which prohibits the

> [p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; *e.g.*, hacksaw blade, body armor, maps, handmade rope, or other escape

paraphernalia, *portable telephone*, pager, or other electronic device).

Ex. A to DeLoia Decl., ECF No. 8-1 at 45 (emphasis added); Ex. D to DeLoia Decl., ECF No. 8-4 at 1, 3; *see also* DeLoia Decl. ¶ 9. At the time the incident report was delivered, Petitioner was advised of his right to remain silent. Ex. D to DeLoia Decl., ECF No. 8-4 at 3. Petitioner stated that he understood his rights and declined to make a statement. Ex. D to DeLoia Decl., ECF No. 8-4 at 3; *see also* DeLoia Decl. ¶ 10. The matter was referred to the unit discipline committee. Ex. D to DeLoia Decl., ECF No. 8-4 at 3; *see also* DeLoia Decl. ¶ 10.

Petitioner then had an initial hearing before the unit discipline committee. DeLoia Decl. ¶ 11; *see* Ex. D to DeLoia Decl., ECF No. 8-4 at 2. At this initial hearing, Petitioner had "[n]o [c]omment." Ex. D to DeLoia Decl., ECF No. 8-4 at 2. Petitioner was advised that he was being referred to a hearing before the Discipline Hearing Officer ("DHO"). Ex. D to DeLoia Decl., ECF No. 8-4 at 2; *see also* DeLoia ¶ 11. Petitioner was also advised of the rights afforded to him at that hearing, including the right to: (1) "have a written copy of the charge(s) against [him] . . . prior to" the hearing; (2) have a staff representative; (3) "call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence"; (4) "present a statement or remain silent" with the additional advisory that silence could "be used to draw an adverse inference against [him]," but could not alone "be used to support a finding that [he] committed a prohibited act"; (5) "be present throughout the discipline hearing"; (6) "be advised of the DHO[']s decision, the facts supporting that decision, . . . and the DHO[']s

3

disposition in writing"; and (7) appeal the DHO's decision "*within 20 calendar days of notice of the DHO[']s decision and disposition*."  Ex. E to DeLoia Decl., ECF No. 8-5 at 1; *see also* DeLoia Decl. ¶ 11.  The notice of rights was signed by Petitioner.  Ex. E to DeLoia Decl., ECF No. 8-5 at 1.

### C. DHO Hearing

The DHO hearing was held in September 2021.  DeLoia Decl. ¶ 12; *see also* Ex. C to DeLoia Decl., ECF No. 8-3 at 1; *cf.* Pet. at 1 (stating he was seen by the DHO "[i]n or around August 2021").  Petitioner neither admitted nor denied the charge, and made no statement.  Ex. G to DeLoia Decl., ECF No. 8-7 at 1.

The DHO considered the incident report and the investigative materials.  Ex. G to DeLoia Decl., ECF No. 8-7 at 2-3; *see also* DeLoia Decl. ¶ 13.  The DHO also drew an adverse inference against Petitioner as he "had not made a defense to the charge or made any statement in [his] defense throughout the discipline process to include the DHO hearing."  Ex. G to DeLoia Decl., ECF No. 8-7 at 3.  The DHO reasoned that "if [Petitioner] had a defense to the charge [Petitioner] would have at the very least[] provided a written statement for consideration."  Ex. G to DeLoia Decl., ECF No. 8-7 at 3.

"[B]ased off the greater weight of the evidence . . . ," the DHO found that Petitioner committed a violation of Code 108 for possessing a hazardous tool.  Ex. G to DeLoia Decl., ECF No. 8-7 at 3.  Petitioner was sanctioned with a disallowance of 41 days of good conduct time; 30 days of disciplinary segregation; and the loss of both commissary and e-mail privileges for 120 days.  Ex. G to DeLoia Decl., ECF No. 8-7 at

4

3; DeLoia Decl. ¶ 14.  It appears that Petitioner may have received some information regarding the sanctions being imposed at the time of the hearing.  *See* Pet. at 1.

### D.  DHO Hearing Report

An inmate is entitled to "receive a written copy of the DHO's decision following the hearing."  28 C.F.R. § 541.8(h); *see also* Ex. A to DeLoia Decl., ECF No. 8-1 at 35.  BOP Program Statement 5270.09 states that this written decision is "*ordinarily* [provided] within 15 work days of the decision."  Ex. A to DeLoia Decl., ECF No. 8-1 at 35 (emphasis added).  As noted above, any appeal is due "within 20 calendar days of notice of the DHO[']s decision and disposition."  Ex. E to DeLoia Decl., ECF No. 8-5 at 1; *see* Ex. G to DeLoia Decl., ECF No. 8-7 at 4; *cf.* 28 C.F.R. § 542.14(a) ("The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred.").

Here, the written DHO Report was not issued until several months after the hearing.  Ex. G to DeLoia Decl., ECF No. 8-7 at 4; DeLoia Decl. ¶ 12.  Petitioner filed the instant petition, stating that he had not yet received a copy of the DHO Report and was concerned about receiving the report so that he could properly appeal the sanctions imposed.[2]  Pet. at 1.  When responding to the petition, Respondent Warden J. Fikes explained that the DHO Report was issued on March 14, 2022, and a copy delivered to Petitioner on March 15, 2022.  DeLoia Decl. ¶ 12; *compare* Ex. G to DeLoia Decl., ECF

---

[2] *See* Resp. at 12 ("Respondent is not seeking dismissal of the petition based on [Petitioner's] lack of exhaustion."), ECF No. 7.  *Cf. Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) ("exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

No. 8-7 at 4, *with* Ex. C to DeLoia Decl., ECF No. 8-3 at 1.  At the time of delivery, Petitioner was again advised of his right to appeal within 20 days.  Ex. G to DeLoia Decl., ECF No. 8-7 at 4.  Petitioner was given an opportunity to file a reply in support of his petition and he elected not to do so.  Accordingly, based on the record before the Court, it is uncontested that Petitioner was given a copy of the DHO Report the day after it was issued.

### III. ANALYSIS

A writ of habeas corpus under 28 U.S.C. § 2241 is the appropriate vehicle for challenging the loss of good time.  *See Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014).  The loss of "good time credits as discipline for violating a prison rule implicates a liberty interest that is protected by the Due Process Clause."  *Espinoza v. Peterson*, 283 F.3d 949, 951 (8th Cir. 2002) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555-58 (1974)); *accord Louis v. Dep't of Corr. Servs. of Neb.*, 437 F.3d 697, 700 (8th Cir. 2006).

But, "due process rights are limited in the prison disciplinary context."  *Louis*, 437 F.3d at 700.

> In general, when a prison disciplinary hearing may result in the loss of good time credits -
>
> > the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action . . . . [In addition,] the findings of the prison disciplinary board [must be] supported by some evidence in the record.

6

*Espinoza*, 283 F.3d at 951-52 (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)).

Petitioner seeks an order[3] finding that his due process rights were violated when he was not provided with the DHO's Report within the customary 15 days. He requests that the lost good-conduct time be restored, his privileges be reinstated, the incident be expunged from his disciplinary record, and he be transferred back to a minimum-security facility.

Petitioner "argues that the failure to provide the DHO [R]eport in the specified time period by the BOP Program Statements violated one of the minimal due process requirements." Pet. at 2. Courts have repeatedly observed that the customary 15 days referred to in BOP Program Statement 5270.09 "is only advisory, providing that 'ordinarily' the inmate is given a copy of the DHO's report within fifteen days." *Shahan v. Ormond*, No. 3:18CV200-HEH, 2018 WL 6681210, at *5 (E.D. Va. Dec. 19, 2018); *see, e.g., Walton*, 2022 WL 1652658, at *6 (citing cases). "[T]he use of the word 'ordinarily' in terms of giving an 'inmate a written copy of the decisions and disposition, ordinarily within 15 work days of the decision' indicates that the 15-day notice period is

---

[3] Petitioner frames the relief sought in terms of a "preliminary injunction or temporary restraining order." Pet. at 1. It is not clear to this Court what sort of injunctive relief Petitioner is seeking beyond the merits-based relief sought in his petition. *Cf. Dataphase Sys., Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (inquiry for preliminary relief "is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined"). To the extent this could be interpreted as seeking court intervention directing Respondent to provide him with a copy of the DHO Report, *see* Pet. at 1 ("At this point he realizes he will not receive the report without judicial intervention."), such request was moot mere days after the petition was filed, even before Petitioner paid the filing fee. To the extent this could be read more broadly to encompass the merits, Petitioner is not entitled to relief for the reasons stated herein. *See Wildhawk Invest., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022) (noting "[l]ikelihood of success on the merits" is "most important factor" in deciding motion for a preliminary injunction); *see also Progressive Techs., Inc. v. Chaffin Holdings, Inc.*, 33 F.4th 481, 485 (8th Cir. 2022) ("If a movant does not satisfy the likelihood of success prong, it strongly suggests that preliminary injunctive relief should be denied." (quotation omitted)).

not mandatory, and does not in and of itself provided a basis for habeas relief." *Walton*, 2022 WL 1652658, at *6; *see also, e.g.*, *Martinez*, 2023 WL 4374174, at *3.

Moreover, even if the several months' delay in Petitioner's receipt of the DHO Report is construed to be a failure by the BOP to follow its own policy, it is well established that "a failure to follow BOP policy is not, by itself, enough to support a finding that procedures lacked due process under the Fifth Amendment." *Walton*, 2022 WL 1652658, at *5 (citing cases); *see also, e.g.*, *Martinez*, 2023 WL 4374174, at *3; *Orozco v. Streeval*, No. 7:19-cv-00040, 2021 WL 849985, at *3 (W.D. Va. Mar. 5, 2021); *Shahan*, 2018 WL 6681210, at *5.

"It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay." *Shahan*, 2018 WL 6681210, at *8 (quoting *Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999)); *accord Walton*, 2022 WL 1652658, at *6; *Orozco*, 2021 WL 849985, at *3. Thus, "[i]n the context of an inmate's delayed receipt of the DHO's report, courts have held that inmates do not suffer any prejudice when they receive the DHO's report months after the hearing, and that such a multi-month delay does not constitute a due process violation." *Shahan*, 2018 WL 6681210, at *8; *accord Walton*, 2022 WL 1652658, at *6; *see also, e.g.*, *Burnell v. Wilson*, No. 2:21cv391, 2022 WL 2163822, at *4 (E.D. Va. May 4, 2022) ("A delay in receiving a written statement of the evidence relied on that does not have a prejudicial effect on the prisoner's administrative appeal, does not provide a basis for habeas relief on due process grounds."), *report and recommendation accepted*, 2022 WL

2161033 (E.D. Va. June 15, 2022). Petitioner bears the burden to demonstrate prejudice as a result of the BOP's delay. *Martinez*, 2023 WL 4374174, at *4.

Again, based on the record before the Court, there is no dispute that Petitioner ultimately received the DHO Report the day after it was issued, at which time he was again advised that he had 20 days from receipt to appeal. Thus, "[w]hile the BOP's delivery of the DHO's report was delayed, the delay was a harmless error because, under the BOP's policies, [Petitioner] would still have been able to file a timely appeal once he received a copy of the report." *Arafat v. Fikes*, No. 22-cv-370 (WMW/JFD), 2022 WL 18215877, at *4 (D. Minn. Oct. 12, 2022), *report and recommendation adopted*, 2023 WL 146199 (D. Minn. Jan. 10, 2023); *see Rios v. Fisher*, No. 10-cv-3313 (PJS/FLN), 2011 WL 3610455, at * 4 (D. Minn. May 25, 2011), *report and recommendation adopted*, 2011 WL 3607149 (D. Minn. Aug. 15, 2011). Petitioner has not articulated any resulting prejudice. Indeed, Petitioner was given an opportunity to file a reply in support of his petition and he elected not to do so. In the end, Petitioner "received the same amount of time to appeal the decision—20 days—as an inmate who received his written DHO report within the ordinary 15-day timeframe." *Martinez*, 2023 WL 4374174, at *4.

Further, upon receipt of the DHO Report, Petitioner received all of the procedural due process requirements owed to him. *See Espinoza*, 283 F.3d at 952. Petitioner was given advanced written notice of the disciplinary charge. Petitioner was advised in advance of the DHO hearing of the rights he had at the hearing, including but not limited to the right to call witnesses and present documentary evidence. And albeit several months later, the DHO prepared a written report following the hearing, which, among

9

other things, listed the evidence received, described the basis for the DHO's findings, and explained the reasons for the sanctions imposed.

Lastly, the DHO's decision was supported by some evidence in the record. "This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced." *Hill*, 472 U.S. at 456 (quotation omitted). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455; *accord Flowers v. Anderson*, 661 F.3d 977, 980 (8th Cir. 2011). Rather, it requires the Court to assess only "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56; *accord Flowers*, 661 F.3d at 980.

Notably, Petitioner has not claimed that the DHO's decision lacked the requisite evidentiary support. Here, the DHO had the incident report in which a corrections officer personally observed Petitioner with the two cell phones in his hands, photos of the cell phones in question, and chain-of-custody documentation. *See Orozco*, 2021 WL 849985, at *5 ("Here, the DHO relied on the [incident report], investigation, photographs of the cell phone, and chain of custody log for the cell phone in finding that Orozco committed the prohibited act of possession of a hazardous tool."); *see also Walton*, 2022 WL 1652658, at *8 ("Some evidence can include statements or testimony, a written account of the incident, or the incident report." (quotation omitted)). In addition to this evidence, the DHO drew an adverse inference against Petitioner based on the fact that he "had not made a defense to the charge or made any statement in [his] defense throughout the

discipline process to include the DHO hearing."  Ex. G to DeLoia Decl., ECF No. 8-7 at

3.  *See Orozco*, 2021 WL 849985, at *6 ("The DHO also relied on Orozco's silence

before the investigating officer, [unit disciplinary committee] hearing, and hearing before

the DHO.  The DHO was entitled to draw a negative inference from that silence."

(citations omitted)); *cf.* Ex. E to DeLoia Decl., ECF No. 8-5 at 1 (cautioning that "silence

may be used to draw an adverse inference against you," but "silence alone may not be

used to support a finding that you committed a prohibited act").  It cannot be said that the

DHO lacked any evidence or that there was no basis in fact to conclude that Petitioner

possessed the contraband cell phones.  *See Hill*, 472 U.S. at 455-56; *see also Orozco*,

2021 WL 849985, at *5.

[Continued on next page.]

11

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that:

1.  The petition, ECF No. 1, be **DENIED**.

2.  This matter be **DISMISSED**.

Date: October__31__, 2023                    _____*s/ Tony N. Leung*_____
                                             Tony N. Leung
                                             United States Magistrate Judge
                                             District of Minnesota

                                             *Franklin v. Fikes*
                                             Case No. 22-cv-646 (JRT/TNL)

## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).